# NO. 12-17-00105-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *VICTOR ALVARADO,* *APPELLANT* | § | *APPEAL FROM THE 272ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *BRAZOS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*[1]

Victor Alvarado appeals his conviction for assault on a public servant. In his sole issue, Appellant contends that he received ineffective assistance of counsel. We affirm.

## BACKGROUND

On November 19, 2014, Appellant entered the Foxhole Lounge at the Veterans of Foreign Wars Hall (VFW) in Bryan, Texas. Appellant frequently patronized the bar. Appellant had an argument with another bar patron, and Rene Rudd, the bar manager, asked him to leave. He initially left, but returned and demanded his change from drinks he ordered. Rudd believed Appellant was intoxicated and again asked him to leave. Appellant became aggressive and Rudd called the police. Bryan Police Department Officer William Dunford arrived.

According to Rudd and Officer Dunford, the officer asked Appellant to step outside. Instead, Appellant shouted an expletive at Officer Dunford. Rudd believed that Appellant then punched the officer several times. According to Officer Dunford though, Appellant unsuccessfully attempted to strike him. Michael and Martha Bilford, witnesses and acquaintances of Appellant

---

[1] Pursuant to a docket equalization order issued by the Supreme Court of Texas on March 28, 2017, this appeal has been transferred to this Court from the Tenth Court of Appeals in Waco, Texas.

who would later testify on his behalf, believed that Officer Dunford entered the bar and slammed Appellant into a wall without warning, causing eye and other facial injuries.[2]

Officer Dunford attempted an arm bar maneuver to take Appellant to the ground, but was unsuccessful. During the melee, Appellant grabbed the officer's jacket, pulling him to the ground. Officer Dunford heard a popping sound, and later felt intense pain in his shoulder. Appellant grabbed at the officer and pulled out his ear piece and body mic, which prevented him from calling for assistance. Officer Dunford then attempted to deploy his taser, but it struck his own jacket.[3] Sensing the elevated danger, the officer disengaged Appellant, and the two stood up. According to Officer Dunford, Appellant took an attack position, and the officer performed a palm strike on Appellant's chest.

Concerned that Appellant was overpowering the officer, Rudd called 911 again for further police assistance. At that time, Nathanael Chapman, another witness at the bar, also believed that Appellant might overpower the officer. Therefore, he assisted Officer Dunford and they restrained Appellant until Bryan Police Department Officer Stephen Davis arrived. Appellant was handcuffed and later taken to a medical facility for an injury assessment and treatment. He mentioned that he had lip and mouth injuries, but never complained of any other facial or eye injuries, nor did his booking photo show any such injuries. Officer Dunford injured his knee, and tore a muscle in his shoulder, necessitating physical therapy and two months of light duty. At the time of the ensuing jury trial, he still had pain and lacked full functionality in the injured shoulder.

Appellant was indicted for assault on a public servant, enhanced to the punishment level of a second degree felony due to a prior felony conviction. Appellant pleaded "not guilty" to the offense, but the jury subsequently found Appellant "guilty" of the offense. Appellant pleaded "true" to the indictment's enhancement allegation. After a punishment hearing, the trial court sentenced Appellant to ten years and one day of imprisonment. This appeal followed.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Appellant contends that he received ineffective assistance of counsel on twenty-two grounds. These grounds can be categorized in six broad classifications: (1) counsel's

---

[2] The Bilfords did not provide a statement to the authorities on the night of the incident in question.

[3] The Bilfords believed that the officer deployed his Taser against Appellant after he had been handcuffed, which was refuted by Officer Dunford.

2

failure to object to inadmissible and harmful hearsay evidence; (2) counsel's introduction of extraneous acts of Appellant's misconduct; (3) counsel's failure to object to the erroneous jury charge; (4) his failure to object to improper veracity questions asked by the State on cross-examination of defense witnesses; (5) counsel opened the door to inadmissible testimony concerning questions of law; and (6) he failed to object to a variance between the prior conviction alleged and used to enhance punishment. Appellant also argues that the cumulative effect of these errors caused a breakdown in the adversarial process and undermines confidence in the outcome of his trial.

## Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we apply the United States Supreme Court's two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). To prevail on an ineffective assistance of counsel claim, an appellant must show that (1) trial counsel's representation was deficient, and (2) the deficient performance prejudiced the defense to the extent that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. An appellant must prove both prongs of *Strickland* by a preponderance of the evidence. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2002). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an appellant's ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficient performance, an appellant must show that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65. "This requires showing that [trial] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, an appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* When a reviewing court may more efficiently dispose of an ineffective assistance of counsel claim on the prejudice prong without determining whether

3

counsel's performance was deficient, the court should follow that course. *See id.*, 466 U.S. at 697, 104 S. Ct. 2069.

Review of trial counsel's representation is highly deferential. *See id.*, 466 U.S. at 689, 104 S. Ct. at 2065. In our review, we indulge a strong presumption that trial counsel's actions fell within a wide range of reasonable and professional assistance. *Id.* It is the appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*; *Tong*, 25 S.W.3d at 712. Moreover, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813 (citation omitted). When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

When, as here, no record specifically focusing on trial counsel's conduct was developed at a hearing on a motion for new trial, it is extremely difficult to show that counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814. Absent an opportunity for trial counsel to explain the conduct in question, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citation omitted).

## Hearsay

In his first five grounds, Appellant argues that trial counsel failed to object to the following alleged inadmissible and harmful hearsay evidence: (1) Rudd's testimony that she heard Officer Dunford tell Appellant to step outside the bar so that he could speak with him; (2) Rudd's 911 call, which contains statements by a multitude of unidentified speakers; (3) Officer Dunford's testimony that his doctor told him he had a torn rotator cuff; (4) Officer Dunford's testimony that his doctor told him that he had reached his maximum level of recovery; and (5) the presentence investigation report (PSI) during the punishment hearing.

The record is silent regarding the reasons for counsel's conduct, and consequently, finding that counsel was ineffective would require impermissible speculation. *Gamble*, 916 S.W.2d at 93. Moreover, Appellant did not meet his burden to show how the outcome would have been different had counsel objected.

In any event, the State showed that any objections would have been properly overruled or were harmless. For example, Appellant expected that not only would Rudd testify that she heard Officer Dunford ask him to leave the bar, but that the officer would testify similarly as non-hearsay. Since both testified to the same or similar facts without objection, there was no reversible error. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

With respect to the 911 call, there are several unidentified voices, but we cannot discern what they say. The trial court could have properly admitted the 911 call recording as a present sense impression or a statement regarding the declarant's then-existing mental, emotional, or physical condition. *See* TEX. R. EVID. 803(1), (3); *Reyes v. State*, 314 S.W.3d 74, 77 (Tex. App.—San Antonio 2010, no pet.).

With regard to Officer Dunford's testimony concerning his injuries, the offense of assault on a public servant, as indicted here, required the State to show that Appellant caused bodily injuries to him. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2017); *Bryant v. State*, 47 S.W.3d 80, 81 (Tex. App.—Waco 2001, pet. ref'd). Bodily injury includes physical pain or impairment of a physical condition. TEX. PENAL CODE ANN. § 1.07(8) (West Supp. 2017). Testimony that a victim suffered physical pain is sufficient to establish bodily injury. *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); *Crow v. State*, 500 S.W.3d 122, 129 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Prior to his testimony concerning his doctor's statements, Dunford testified to similar facts concerning the injury without objection, and any error would have been harmless. *See Leday*, 983 S.W.2d at 717.

Finally, the parties may offer evidence on any matter the court deems relevant to sentencing. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2017). A PSI is required when a defendant, as in the present case, seeks community supervision from the trial court in a felony case without a plea agreement. *See id*. art. 42A.252(a), (c) (West 2018). Appellant requested the PSI, which the trial court granted. The PSI process resulted in a delay in the sentencing process, allowing Appellant to remain out of jail on bond. Moreover, the fact that contents of the PSI contain hearsay is inapposite. *See Fryer v. State*, 68 S.W.3d 628, 631 (Tex. Crim. App. 2002) (stating that the rules of evidence generally do not apply to the contents of a PSI report and that the trial court can consider the contents of a PSI report, even if the contents are hearsay or would not have been admissible if offered into evidence at the punishment hearing).

5

Appellate counsel does not identify what specific information contained in the PSI is objectionable. Therefore, any objection to the report would have been fruitless.

## Extraneous Acts of Misconduct

In the sixth through tenth grounds, Appellant argues that counsel improperly introduced extraneous acts of Appellant's misconduct. Specifically, Appellant claims that during counsel's cross-examination of Rudd, he questioned her concerning her previous trouble with Appellant in the bar, having to cut him off from liquor sales on previous occasions, and Appellant's altercation with another bar patron shortly before his encounter with Officer Dunford. Appellant also argues counsel introduced evidence in his direct examination of Michael and Martha Bilford concerning Appellant's earlier altercation with another bar patron.

The State argues defense counsel asked these questions to advance his defensive theories to show that (1) Appellant left the bar on previous occasions when asked and that he returned during this incident only because he wanted his money back, (2) Rudd may have had an ulterior motive for asking him to leave the bar, and (3) he did not seek to cause trouble in refusing to leave the bar.

As we explained above, the record is silent regarding the reasons for counsel's conduct, and consequently, finding that counsel was ineffective would require impermissible speculation. *Gamble*, 916 S.W.2d at 93. Moreover, Appellant did not meet his burden to show how the outcome would have been different had counsel not engaged in this line of questioning.

## Erroneous Jury Charge

In the eleventh ground, Appellant contends that counsel failed to object to the erroneous jury charge. Appellant argues that counsel should have requested a jury instruction in the court's charge in accordance with Texas Penal Code Section 2.05(a)(2) that the statutory presumption provided by Texas Penal Code Section 22.01(d) is a permissive presumption.

A person commits assault against a public servant if the person intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(a), (b)(1). The actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *Id.* § 22.01(d).

6

Mandatory presumptions are unconstitutional because they relieve the State of its constitutionally-required burden of proving every element of the offense beyond a reasonable doubt. *Garrett v. State*, 220 S.W.3d 926, 930 (Tex. Crim. App. 2007). A permissive presumption, on the other hand, allows, but does not require, the fact finder to find the elemental fact on proof of the predicate fact, and places no burden on the accused to disprove the elemental fact. *Id.* at 931 n.5. Instructions pursuant to Section 2.05(a)(2) of the Texas Penal Code—which require the jury to be instructed on the permissive nature of any statutory presumption favorable to the State and how the presumption relates to the State's burden of proof—convert an otherwise impermissible mandatory presumption into a permissive presumption. *Id.* at 931. A jury charge containing a statutory presumption that benefits the State must also contain the instructions required by Penal Code Section 2.05(a)(2). *See Hollander v. State,* 414 S.W.3d 746, 754 (Tex. Crim. App. 2013) (Cochran, J., concurring).

In the present case, the trial court included in its charge the Section 22.01(d) presumption that Appellant knew that Officer Dunford was a police officer because he wore a distinctive uniform or badge indicating his employment as a police officer. However, the jury charge did not include the instructions from section 2.05(a)(2) of the Penal Code to explain to the jury how to implement the submitted presumption. The trial court's failure to include these instructions was error. *See Hollander,* 414 S.W.3d at 749 n.9; *McIlvennia v. State*, No. 03-14-00352-CR, 2016 WL 3361185, at *7-8 (Tex. App.—Austin June 10, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding that failure to include Section 2.05 language in jury charge based on presumption that defendant knew person was officer who wore uniform or badge was error).

However, this error did not harm Appellant, because the evidence is overwhelming that Appellant knew Officer Dunford was a police officer. *See McIlvennia*, 2016 WL 3361185, at *11-12 (finding no egregious harm in similar circumstances). Rudd told Appellant she would call the police if he did not leave. Shortly thereafter, Officer Dunford entered the bar. Rudd and Chapman testified that the officer wore his uniform at the time. Officer Dunford also testified that he wore a Bryan Police Department uniform and jacket. The jacket had sewn on patches and a badge identifying him as a police officer. The officer asked Appellant to step outside, and Appellant turned and faced him prior to the altercation. Moreover, during the altercation, Officer Dunford attempted to deploy his taser, a common item used by police, to subdue him.

7

Furthermore, Appellant did not show that he suffered prejudice due to trial counsel's failure to object to the absence of a Section 2.05(a)(2) instruction. In other words, the trial court would not have abused its discretion in concluding that Appellant failed to prove that there was a reasonable probability that, but for counsel's failure to object to the alleged errors in the jury charge, the result of the proceeding would have been different. *See Griffin v. State*, No. 03-15-00398-CR, 2017 WL 2229869, at *8 (Tex. App.—Austin May 19, 2017, pet. ref'd) (mem. op., not designated for publication) (holding no ineffective assistance when trial counsel failed to object to lack of Section 2.05 instruction based on Section 22.01 presumption because overwhelming evidence showed that defendant knew person was public servant and therefore suffered no prejudice).

**Veracity Questions**

In his twelfth through seventeenth grounds, Appellant alleges that trial counsel failed to object to improper veracity questions by the State asking Michael and Martha Bilford whether three State's witnesses who previously testified had lied under oath concerning their different version of the events in question.

It is well-settled that an attorney may not impeach one witness's testimony with the testimony of other witnesses. *See Ex parte McFarland*, 163 S.W.3d 743, 755 n.37 (Tex. Crim. App. 2005). However, the Texas Court of Criminal Appeals has held that when the record is silent as to why trial counsel failed to object to the improper opinion testimony on the veracity of another witness's testimony, a defendant generally fails to meet his burden to establish deficient performance under the first prong of *Strickland*. *See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011).

Even if we were to conclude that trial counsel's performance was deficient, Appellant has not satisfied the prejudice prong under *Strickland*. Improper veracity questions are generally held harmless because they merely emphasize the obvious: that the defendant disagrees with the State's witnesses' factual assertions. *See Temple v. State*, 342 S.W.3d 572, 615 (Tex. App.—Houston [14th Dist.] 2010), *aff'd,* 390 S.W.3d 341 (Tex. Crim. App. 2013) (reviewing improper veracity question cases). In this case, although it was not proper for the State to ask the Bilfords questions about the truthfulness of Officer Dunford, Rudd, and Chapman, counsel's failure to object was not harmful because it merely highlighted that they believed their version of events rather than the

8

State's version. *See* **Cordero v. State**, 444 S.W.3d 812, 823–24 (Tex. App.—Beaumont 2014, pet. ref'd); **Temple**, 342 S.W.3d at 615.

## Testimony on Questions of Law

In the eighteenth through twenty-first grounds, Appellant argues that counsel improperly opened the door when he asked questions during his cross-examination of Officer Dunford concerning questions of law—namely whether Appellant's actions constituted resisting arrest. On redirect, the State asked questions on the law of resisting arrest and assault and at what point Appellant's conduct became an assault rather than merely resisting arrest.

The State argued that this line of questioning was an attempt to advance Appellant's trial strategy that although he may have resisted arrest, an offense for which he was not indicted, Appellant did not assault the officer. As we have stated earlier, the record is silent regarding the reasons for counsel's conduct, and consequently, finding that counsel was ineffective would require impermissible speculation. **Gamble**, 916 S.W.2d at 93. Appellant did not meet his burden to show how the outcome would have been different had counsel not opened the door to such a line of questioning.

## Variance

As to the remaining twenty-second ground, Appellant argues that counsel failed to object to a variance between the prior conviction alleged and used to enhance punishment. Specifically, the indictment alleges an enhancement for a prior "burglary" conviction on June 25, 1992, cause number 21,263-272, in the 272nd District Court of Brazos County, Texas. The actual offense used to enhance his punishment level was for an "attempted burglary of a habitation."

The purpose of an enhancement allegation is to provide the accused with notice of the prior conviction relied upon by the state. **Coleman v. State**, 577 S.W.2d 486, 488 (Tex. Crim. App. 1979). The object of the doctrine of variance is to avoid prejudicial surprise to the defendant. **Freda v. State**, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). A variance between the offense alleged in an enhancement paragraph and the proof presented at trial is material and fatal only if the variance was such as to mislead the appellant to his prejudice. **Id.**

The conviction date, cause number, and district court number were all correct. Moreover, Appellant pleaded true to the enhancement, and there was no evidence that he was surprised by it or that the State intended to mislead him to his detriment. The enhancement paragraph in the indictment contained all the correct information with the exception of the name of the offense—

9

an "attempted burglary of a habitation" as opposed to a "burglary." This sort of variance has been held to not be fatal. *See id.* at 42–43 (holding that variance not fatal when enhancement paragraph alleged prior conviction for bank robbery while proof showed conviction was for conspiracy to commit bank robbery); *Williams v. State*, 980 S.W.2d 222, 226–27 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that variance not fatal when enhancement paragraph alleged grand theft auto while proof showed conviction for taking a vehicle without the owner's consent); *Barrett v. State*, 900 S.W.2d 748, 752 (Tex. App.—Tyler 1995, pet. ref'd) (holding that variance not fatal when enhancement paragraph alleged prior conviction for burglary of a building while proof showed conviction for attempted burglary of a building). Accordingly, even assuming that counsel should have objected, an objection that would have been properly overruled, Appellant could not have been prejudiced by his failure to object to the variance.

## Cumulative Effect of Errors

Appellant finally argues that the cumulative effect of counsel's errors caused a breakdown in the adversarial process sufficient to undermine our confidence in the outcome of his trial.

The concept of "cumulative error" has been extended to ineffective assistance of counsel claims. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (citing *Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988)). However, as the *Chamberlain* court noted, there is no authority for the proposition that the cumulative effect of non-errors requires reversal. *Chamberlain*, 998 S.W.2d at 238. Additionally, the mere existence of multiple errors does not warrant reversal unless they operated in concert to undermine the fundamental fairness of the proceedings. *Estrada v. Smith*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Finally, if an appellant's individual claims of error lack merit, then there is no possibility of cumulative error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009).

Appellant identifies the alleged deficiencies in his brief, but he does not attempt to explain how each individual deficiency prejudiced the outcome of the case. Rather, he simply argued that the raw number of errors caused prejudice. We have addressed the complaints lodged against his trial counsel. The alleged actions of ineffectiveness are either not deficient, the record has not been developed to establish counsel's strategy, or Appellant could not have been prejudiced by the action. In other words, there is little or nothing to cumulate. Therefore, we cannot conclude that this is one of those rare cases where the cumulative effect of the ineffective assistance warrants

reversal of the judgment on direct appeal.  *See **Estrada***, 313 S.W.3d at 311; *see also **Gamboa***, 296 S.W.3d at 585.

Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, the judgment of the trial court is ***affirmed***.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 19, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 19, 2018**

**NO. 12-17-00105-CR**

**VICTOR ALVARADO,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 272nd District Court
of Brazos County, Texas (Tr.Ct.No. 15-00995-CRF-272)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*